IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ORUS ASHBY BERKLEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:17-cv-00357 |
| | ) | |
| MOUNTAIN VALLEY PIPELINE, LLC, *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiffs in this case are landowners whose properties are in the path of a proposed natural gas pipeline. Before plaintiffs filed suit, defendant Mountain Valley Pipeline (MVP) had filed an application with the Federal Energy Regulatory Commission (FERC) seeking authority to obtain private land for the building of the pipeline. In addition to suing MVP, plaintiffs named as defendants FERC and its chairman, currently Neil Chatterjee (collectively the FERC defendants). The FERC defendants seek dismissal of the three claims against them—Counts One, Two, and Three—on the ground, among others, that this court lacks jurisdiction over the claims. MVP, too, asserts that this court lacks jurisdiction over the same three counts.[1] The jurisdictional issues have been fully briefed and were argued before the court at a November 3, 2017 hearing. For the reasons explained in this opinion, the court concludes that it lacks jurisdiction over plaintiffs' claims in Counts One, Two, and Three. Thus, it will grant the motions to dismiss for lack of jurisdiction, dismiss Counts One, Two, and Three without prejudice, and dismiss the FERC defendants from the case. The court will hold a separate

---

[1] MVP admits that the only other count against it, Count Four, is not subject to dismissal on jurisdictional grounds, but urges that it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim.

hearing as to the viability of Count Four against MVP, in which plaintiffs challenge the constitutionality of Virginia Code § 56-49.01, after proper notice has been given to the Commonwealth of Virginia of that claim. Because Count Four is brought only on behalf of Virginia plaintiffs, moreover, the court also will dismiss all non-Virginia plaintiffs from the case.

I. BACKGROUND

Plaintiffs in this case are landowners within the path of MVP's proposed natural gas pipeline. At the time plaintiffs filed suit, MVP had filed an application with FERC to obtain a certificate of public convenience and necessity, which is required under the Natural Gas Act (NGA), 15 U.S.C. § 717 *et seq.*, for a gas company to assert the power of eminent domain. 15 U.S.C. § 717f(h) (stating requirements for an entity to claim condemnation, including that the entity be a "holder of a certificate of public convenience and necessity" issued by FERC). After suit was filed, but before the hearing on the jurisdictional questions, FERC issued the certificate of public convenience and necessity to MVP, although that certificate contains a number of conditions. *See Mountain Valley Pipeline, LLC*, 161 FERC ¶ 61,043 (October 13, 2017 Order Issuing Certificates and Granting Abandonment Authority), https://www.ferc.gov/CalendarFiles/ 20171013192058-CP16-10-000.pdf. After that certificate was issued, MVP filed condemnation actions—including one filed in this court—seeking to exercise eminent domain power over multiple parcels of land. *See, e.g., Mountain Valley Pipeline, LLC v. Easements to Construct, Operate, and Maintain a Natural Gas Pipeline Over Tracts of Land in Giles County, Craig County, Montgomery County, Roanoke County, Franklin County, and Pittsylvania County, Virginia, et al.,* No. 7:17-cv-492 (W.D. Va.). Those condemnation actions remain pending.

Plaintiffs describe the instant case, "in its simplest form," as a "constitutional challenge to the eminent domain provision of the NGA, 15 U.S.C. § 717f(h), and the resulting

2

unconstitutional acts of FERC and ultimately MVP." (Compl. 2, Dkt. No. 1.) Plaintiffs' complaint contains four counts. In Count One, plaintiffs allege a violation of their Fifth Amendment rights by defendants. In particular, they contend that the standards and tests that FERC uses to determine whether land is being taken for "public use" "fall well below the standard imposed by the Fifth Amendment." (Compl. 29–30.)

Counts Two and Three are related. In Count Two, plaintiffs contend that Congress' delegation to FERC of the power of eminent domain is overly broad and unconstitutional, focusing primarily on the fact that the delegation itself in § 717f(h) is overly broad. (Compl. 30–31.) Specifically, they assert that Congress did not set forth any intelligible principle for FERC to follow, in violation of the non-delegation doctrine. In Count Three, plaintiffs allege that FERC's "sub-delegation" of the power of eminent domain to MVP under § 717f(h) is unconstitutional.[2]

In Court Four, which is brought only against MVP and not the FERC defendants, plaintiffs allege that MVP has violated the Virginia plaintiffs' rights under the Fifth Amendment to the United States Constitution and Article I, § 11 of the Virginia Constitution through surveying it has already conducted on plaintiffs' land.[3]

---

[2] With regard to both "delegation" arguments, MVP asserts that the claims are based on an incorrect premise and that there is no sub-delegation. Specifically, it argues that, although Congress delegated regulatory authority over natural gas and natural gas companies to FERC in the NGA, the NGA itself delegates the power of eminent domain directly to natural gas companies. (MVP Mem. Supp. Mot. to Dismiss 15–16, Dkt. No. 11.) MVP cites to many cases holding that the delegation of eminent domain power to gas companies in the NGA does not violate the United States Constitution. (*Id.* at 16.) The court does not address these arguments because it lacks jurisdiction over the claims based on them.

[3] Although it is not clear from the complaint, plaintiffs' briefing makes plain—and their counsel confirmed at the hearing—that they believe Virginia Code § 56-49.01 is unconstitutional. (*See, e.g.*, Pls.' Opp'n MVP Mot. Dismiss 15–16, Dkt. No. 22.) Thus, the court directed plaintiffs' counsel to provide notice to the Commonwealth of the constitutional challenge, pursuant to Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403. To date, though, plaintiffs have not filed anything indicating that they have provided the required notice. The court's accompanying order instructs them to do so.

As noted, pending before the court are a motion to dismiss by MVP and a motion to dismiss by the FERC defendants. The two motions raise very similar arguments, with their primary argument being that plaintiffs have brought their challenges in the wrong court at the wrong time. Specifically, they claim that plaintiffs' claims are governed by a provision in the NGA that confers exclusive jurisdiction on specific federal courts of appeals to "to affirm, modify, or set aside" FERC orders. 15 U.S.C. § 717r(b). Plaintiffs counter that they are not raising a challenge to any particular FERC order, but that they are challenging on constitutional grounds the NGA itself and the standards that FERC uses to determine what constitutes a sufficient "public use."

## II. DISCUSSION

**A. The Natural Gas Act's Exclusivity Provision Precludes This Court's Exercise of Jurisdiction.**

The NGA provides its own framework for challenges to FERC orders. Effectively, to challenge a FERC order, a party must first apply for rehearing before FERC and, thereafter, may obtain judicial review before either the United States Court of Appeals for the D.C. Circuit or any other court of appeals where the natural gas company related to the order "is located or has its principal place of business." 15 U.S.C. § 717r(b).

The pertinent language from NGA § 19, codified at 15 U.S.C. § 717r, provides that "[a]ny person . . . aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person . . . is a party may apply for a rehearing within thirty days after the issuance of such order." § 717r(a). If, and only if, a person files for rehearing, however, may the person obtain judicial review: "No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon." *Id.* Subsection (b) explains that a person may obtain review of FERC's

4

order "in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia." § 717r(b). It describes that review as "exclusive," noting that "[u]pon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part." *Id.* It also requires exhaustion: "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is a reasonable ground for failure to do so." *Id.*

As the Fourth Circuit recognized almost forty years ago, the NGA's exclusive jurisdiction provision has a broad reach:

> Section 19(b) . . . vests exclusive jurisdiction to review all decisions of the Commission in the circuit court of appeals . . . ; there is no area of review, whether relating to final or preliminary orders, available in the district court. And this has been the uniform construction given the statute.

*Consol. Gas Supply Corp. v. FERC*, 611 F.2d 951, 957 (4th Cir. 1979) (internal citations omitted). The jurisdictional provision applies to "all issues inhering in the controversy." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958); *Williams Nat. Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 261–62 (10th Cir. 1989) (explaining that the NGA's jurisdictional provision precludes litigation "between the parties of all issues inhering in the controversy, and all other modes of judicial review" and noting that the court "would be hard pressed to formulate a doctrine with a more expansive scope") (citing *City of Tacoma*, 357 U.S. at 335–36).

In a factually similar case, where landowners sought to enjoin the building of a pipeline and recover tort damages for conversion, the Sixth Circuit affirmed the district court's dismissal

5

for lack of jurisdiction, emphasizing that "[e]xclusive means exclusive." *Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 605 (6th Cir. 2010). Likewise, in *Maine Council of Atlantic Salmon Federation v. National Marine Fisheries Service*, 858 F.3d 690 (1st Cir. 2017), the First Circuit affirmed the district court's dismissal of the case before it for lack of jurisdiction, relying on the judicial review provision of the Federal Power Act.[4] There, just as here, a FERC order was issued *after* the filing of the suit, and the appellate court noted: "Once issued, the FERC order was unquestionably subject to the Federal Power Act's provision for direct appellate jurisdiction of the court of appeals . . . ." 858 F.3d at 693.

The court in *Williams Natural Gas Co.*, too, made clear that the fact that suit was filed prior to the issuance of the order does not alter the result that jurisdiction was proper only in the appropriate courts of appeals. As that court reasoned:

> The structure Congress has provided to litigate and resolve disputes arising under the Natural Gas Act should not be lightly disregarded. In the instant case it is apparent that ONG filed its action in state court as a "preemptive strike." It makes little sense for the state court action to have been filed unless ONG at the time of filing knew or had reason to believe that Williams would be awarded the requisite certificate of public convenience and necessity. The roadway to resolution of the dispute between Williams and ONG has been both charted and mandated by Congress. It makes no sense to permit the parties to chart their own route and thus allow piecemeal and unending litigation to ensue.

*Williams Natural Gas Co.*, 890 F.2d at 264.

Indeed, defendants have cited to numerous cases, in addition to those cited above, holding that district courts have no jurisdiction to review or modify FERC orders, even in cases where the challenge is not a direct challenge to the order. *See, e.g.*, *Hunter v. FERC*, 569 F.

---

[4] Because the judicial review provisions of the Federal Power Act and the NGA are "in all material respects substantially identical," courts routinely cite "interchangeably decisions interpreting the pertinent sections of the two statutes." *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 n.7 (1981).

6

Supp. 2d 12, 15–16 (D.D.C. 2008) (concluding district court lacked jurisdiction over request for declaratory judgment where the claim was "so intertwined" with a FERC order to show cause and the accompanying enforcement proceedings that "it must be construed as an attack on the [order to show cause] itself"); *Pub. Util. Dist. No. 1 v. FERC*, 270 F. Supp. 2d 1, 5 (D.D.C. 2003) (holding that the Federal Power Act's exclusivity provision governed a public utility's claim that FERC commissioners violated the Sunshine Act by being involved in ex parte contact, and so the court lacked jurisdiction over the dispute and was without authority to disqualify the commissioners); *Town of Dedham v. FERC*, No. 15-cv-12352-GAO, 2015 WL 4274884, at *2 (D. Mass. July 15, 2015) (concluding the court lacked jurisdiction to consider plaintiff's action to stay enforcement of the order of the commission because, in seeking a stay despite the FERC notice to proceed, Dedham was "effectively asking for review of that notice," which could be reviewed only by the courts of appeals under § 717r).

By contrast, plaintiffs have not cited a single case where a district court exercised jurisdiction over claims—whether characterized as constitutional challenges or otherwise—that would require a modification of a FERC order if the claims were successful. Nonetheless, plaintiffs contend that the NGA's jurisdictional provision is inapplicable to their challenges because they are not challenging a FERC order, but are instead raising constitutional challenges to the statutes granting authority to FERC in the first instance.

Given the breadth of the case law interpreting this provision, however, the court concludes that §717r governs plaintiffs' claims.[5] While it is true that none of the cases relied upon by defendants presented the *precise* constitutional challenges that plaintiffs raise, their

---

[5] Plaintiffs' assertion that this court's dismissal for lack of jurisdiction would deprive them of an opportunity for judicial review over their constitutional claims in an Article III court is incorrect. Their claims can be reviewed by a federal court of appeals. *See* § 717r(b).

7

challenges are "inhering" in the issuance of the FERC order and would fall within the scope of the exclusivity provision. *See City of Tacoma*, 357 U.S. at 336. To conclude otherwise would be to conclude that the claims are separate and apart from any FERC proceeding. But plaintiffs' own complaint—and their standing arguments—make clear that they are concerned not with some abstract constitutional violation, but with the fact that their land will be affected by MVP's proposed pipeline. *See, e.g.*, *Sw. Ctr. for Biological Diversity v. FERC*, 967 F. Supp. 1166, 1172–73 (D. Ariz. 1997) (rejecting plaintiffs' argument that they were not challenging FERC authority to issue a license under the Federal Power Act, but FERC's independent affirmative duty to consult with the United States Fish and Wildlife Service under the Endangered Species Act, and explaining that "[t]he law is clear that any attempt to challenge a license issued by the FERC, however artfully pleaded, will fall under the exclusive jurisdiction of the Federal Courts of Appeal under the FPA.").

Furthermore, there are some cases involving constitutional (or like) challenges where the courts held they lacked jurisdiction due to the NGA's judicial review provision. For example, in *Adorers of the Blood of Christ v. FERC*, No. 17-3163 (3d Cir. Oct. 13, 2017), the Third Circuit issued an order denying an injunction pending appeal "for essentially the reasons" given by the district court in dismissing the claims for lack of jurisdiction. The district court had concluded that it lacked jurisdiction over plaintiff's challenge to a FERC order certifying a natural gas pipeline, even though the challenge was based on religious expression grounds. *Adorers of the Blood of Christ v. FERC*, No. 17-cv-3163, 2017 WL 4310369, at *2–*3 (E.D. Pa. Sept. 28, 2017). The district court called the law concerning the exclusive jurisdiction of the court of appeals "well-settled" and relied heavily on the Sixth Circuit's decision in *American Energy Corp.*, 622 F.3d 602. *See also Lovelace v. United States*, No. 1:15-cv-30131-MAP (D. Mass.

Feb. 18, 2016) (concluding that plaintiff's claims challenging an anticipated FERC decision, including an allegation of an unconstitutional taking, were outside the jurisdiction of the district court).[6]

In short, all of plaintiffs' challenges can be raised in the appropriate court of appeals reviewing the FERC order. Thus, the exclusive remedies available to plaintiffs are to ask for a rehearing before FERC and then file in the appropriate court of appeals. This court does not have jurisdiction to adjudicate the claims raised in Counts One, Two, and Three.

**B. The *Thunder Basin* Framework Also Precludes This Court's Exercise of Jurisdiction.**

Even if plaintiffs' constitutional challenges fell outside the scope of the NGA's broad exclusivity provision, this court would still lack jurisdiction over their claims based on an application of the so-called *Thunder Basin* framework, derived originally from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). This framework is used by courts to determine whether Congress has impliedly precluded jurisdiction in the district courts "by creating a statutory scheme of administrative adjudication and delayed judicial review in a particular court." *Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174, 178 (4th Cir. 2016).

The analysis involves two steps and, at the second step, the court looks at three factors. At the first step, the court asks whether Congress' intent to preclude district-court jurisdiction is "fairly discernible in the statutory scheme," based on an examination of the statute's text, structure, and purpose. *Thunder Basin*, 510 U.S. at 207; *Bennett*, 844 F.3d at 181. At the second step, the court asks whether plaintiffs' claims "are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin*, 510 U.S. at 212. In doing so, the court considers three factors, with the first being the most significant: (1) whether the statutory scheme

---

[6] *Lovelace* is Attachment 1 to the FERC defendants' motion to dismiss for lack of subject matter jurisdiction. (Dkt. No. 20.)

"foreclose[s] all meaningful judicial review"; (2) the extent to which the plaintiff's claims are "wholly collateral" to the statute's review provision; and (3) whether "agency expertise could be brought to bear on the . . . questions presented." *Id.* at 212–13 (internal quotation marks and alterations omitted); *see also Bennett*, 844 F.3d at 181 (summarizing same framework).

The framework and the primary Supreme Court cases that have employed it were recently addressed at length by the Fourth Circuit in *Bennett*. 844 F.3d 174. *Bennett* did not involve FERC or the NGA, but the court there applied the *Thunder Basin* framework to conclude that a district court lacked jurisdiction over constitutional challenges brought by a person challenging the SEC's administrative enforcement proceeding against her.

In so holding, the Fourth Circuit discussed extensively the primary trio of Supreme Court cases applying the framework: *Thunder Basin*, 510 U.S. 200; *Free Enterprise Fund v. Public Accounting Oversight Board*, 561 U.S. 477 (2010); and *Elgin v. Department of the Treasury*, 567 U.S. 1 (2012). In two of the three, *Thunder Basin* and *Elgin*, the Supreme Court concluded that the statutory schemes at issue (under the Federal Mine Safety and Health Amendments Act of 1977 and the Civil Service Reform Act of 1978, respectively) provided the exclusive vehicle for the plaintiffs' constitutional challenges. In the third, *Free Enterprise*, the Court determined that the plaintiff's challenge was not subject to the exclusivity provision of the Sarbanes-Oxley Act of 2002. *See Bennett*, 844 F.3d at 178–81 (discussing the background of all three).

Unsurprisingly, defendants contend that this case is more like *Thunder Basin* and *Elgin*, while plaintiffs argue that the result in this case should be governed by *Free Enterprise* and by

*Califano v. Sanders*, 430 U.S. 99 (1977), a case cited but not discussed in detail in *Bennett*.[7] Based on the analysis in *Bennett* and a fair reading of the trio of cases, the court concludes that the cases clearly support its conclusion that it lacks jurisdiction over the plaintiffs' constitutional claims.

First of all, in explaining and analyzing these cases, *Bennett* specifically noted that the *Free Enterprise* case was something of an anomaly from a factual standpoint. 844 F.3d at 182. There, the plaintiff accounting firm had been inspected and criticized in a report by the Public Accounting Oversight Board (the Board), an entity created by the Sarbanes-Oxley Act whose members were appointed by the SEC. 561 U.S. at 484, 487. The accounting firm asserted that the Sarbanes-Oxley Act was unconstitutional because it violated separation of powers by conferring executive power on Board members without subjecting them to Presidential control and also because it violated the Appointments Clause. *Id.* at 487. The Supreme Court held that the district court had jurisdiction to hear the constitutional challenges. It reasoned that the exclusive jurisdiction provision in the Act applied to a "final order of the Commission" or a "rule of the Commission," and explained that the Commission is the body that reviews any Board rule or sanction, but the Commission had not issued any order or rule from which there could be judicial review. *Id.* at 489. Indeed, there was not even a sanction imposed by the Board that would allow an appeal to the Commission. *Id.* at 490. Further, the Court noted that the challenges in the case were "object[ions] to the Board's existence, not to any of its auditing

---

[7] *Califano* is not on point. There, the Supreme Court held that the Social Security Act did not authorize judicial review of a final agency decision refusing to reopen a claim for social security benefits. 430 U.S. 99. Plaintiff seizes on language from the opinion, though, explaining that district court judicial review of such decisions is available where a plaintiff raises a constitutional challenge because "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." *Id.* at 109. But in *Califano*, the statutory scheme was different than here. There, not allowing constitutional challenges to be heard by a district court would result in no judicial review at all, by any court, beyond a sixty-day time limit. Here, by contrast, there is "delayed" judicial review in designated courts. Thus, the *Thunder Basin* framework is the appropriate analysis to apply here. *See Bennett*, 844 F.3d at 178.

standards" and thus were "'collateral' to any Commission orders or rules from which review might be sought." *Id.* Meaningful review was not otherwise available, therefore, because there was no active proceeding against the specific litigants, who would have had to "bet the farm" by either challenging a rule at random or incurring penalties for noncompliance in order to get their challenges addressed within the statutory framework. *Bennett*, 844 F.3d at 185–86. Indeed, the Fourth Circuit in *Bennett* distinguished *Free Enterprise* on that basis because, in *Bennett*, disciplinary proceedings had already been instituted against the plaintiff. 844 F.3d at 182.

In that respect, the case of *Time Warner Entertainment Co. v. FEC*, 93 F.3d 957 (D.C. Cir. 1996), is similar to *Free Enterprise*. There, the court held that a district court had jurisdiction to consider constitutional challenges to an agency's enabling statute. *Time Warner* involved facial challenges under the First Amendment to provisions of two acts applicable to the cable television industry. In *Time Warner*, though—like *Free Enterprise* and unlike here—the constitutional challenge was "entirely independent of any agency proceedings, whether actual or prospective." 93 F.3d at 965. Indeed, the *Time Warner* court distinguished the case before it from another case where the district court had no jurisdiction, even though that case also involved a challenge to an enabling statute, because in the other case there was a related, ongoing agency proceeding. *Id.* at 965 (discussing *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731 (D.C. Cir. 1987)).

Here, of course, there was an active FERC proceeding at the time plaintiffs filed suit that had the potential to affect their properties, and now there is a FERC order that still has the potential to affect their properties. Thus, their constitutional challenges to that order are not "wholly collateral" to an ongoing proceeding.

12

Turning to the application of the *Thunder Basin* factors here, the court first concludes that the intent of Congress to vest jurisdiction in the appropriate court of appeals is "fairly discernible" from the Natural Gas Act. *See Thunder Basin*, 510 U.S. at 207. Much like the exclusive jurisdiction provision that was at issue in *Thunder Basin* itself, the provision here provides for "exclusive" jurisdiction in the court of appeals to "affirm, modify, or set aside such [FERC] order in whole or in part." 15 U.S.C. § 717r(b). And although plaintiffs claim they are simply raising a general constitutional challenge, the effect of a ruling in their favor would be to modify or set aside the FERC order in whole or in part. By the very text of the statute, the authority to do that lies only with a court of appeals.

Further, as pointed out by defendants, the NGA expressly provides for district court jurisdiction over other aspects of FERC decisions, such as presiding over condemnation proceedings. 15 U.S.C. § 717u. The inclusion of these provisions further supports the conclusion that district courts were to be excluded from addressing the validity of FERC orders and matters related to their validity. *See Total Gas & Power N. Am., Inc. v. FERC*, No. 4:16-cv-1250, 2016 WL 3855865, at *14 (S.D. Tex. July 15, 2016) (discussing text and structure of NGA as part of *Thunder Basin* analysis and describing district court involvement set forth in the NGA as "narrowly tailored to assisting FERC in performance of its functions").

The court thus turns to the second step, which is whether plaintiffs' claims "are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin*, 510 U.S. at 212. In reviewing the three factors to be considered at this step, the court concludes that the first two factors clearly favor a ruling that this court lacks jurisdiction. And significantly, the first factor is the most important one to the analysis. *Bennett*, 884 at 183 n.7 ("We agree with

our sister circuits to have addressed the matter that meaningful judicial review is the most important factor in the *Thunder Basin* analysis.").

As to this important first factor, the statutory scheme here does not "foreclose all meaningful judicial review"; it merely vests that review in a court of appeals. Plaintiffs have the ability to raise their constitutional challenges before an Article III court. It is thus clear that the statutory scheme here provides meaningful judicial review: a federal appeals court is an Article III court and well versed in addressing constitutional challenges, and it can address the challenges that plaintiffs raise here in due course. Indeed, *Thunder Basin*, *Elgin*, and *Bennett* all stand for the proposition that meaningful judicial review is available under a statutory scheme similar to the one here.

Second, as already discussed, plaintiffs' claims here are not are "wholly collateral" to the statute's review provision. *Bennett* adopted the following standard as to that prong: "Claims are not wholly collateral when they are the vehicle by which [plaintiffs] seek to reverse agency action." 844 F.3d at 186–87 (citation and internal quotation marks omitted). In *Bennett*, the plaintiff's constitutional claim would have provided an affirmative defense and, if successful, would have invalidated a Commission order. Thus, her claim was not wholly collateral. The same is true here. Indeed, plaintiffs admitted as much at argument, in that they conceded that if they were successful on their constitutional claims, the FERC order would be invalidated, at least insofar as it conveyed to MVP eminent domain authority. (Hr'g Tr. 48–49, Dkt. No. 43.) Thus, the court concludes that plaintiffs' claims are the "vehicle by which plaintiffs seek to reverse agency action," *Bennett*, 844 F.3d at 186–87, despite plaintiffs' protestations to the contrary.

The third factor slightly favors plaintiffs, in that it is true that FERC does not have expertise in ruling on constitutional questions, nor could it rule on whether authority was

14

unconstitutionally delegated to it. But that factor simply is not dispositive of the jurisdictional question. Indeed, in another case applying the *Thunder Basin* factors, the Fourth Circuit noted that even if the agency lacked the expertise or ability to address a constitutional contention, the appropriate court of appeals could still provide meaningful review. *Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*, 376 F.3d 239, 240 (4th Cir. 2004) ("[E]ven if the administrative agency elects not to decide the constitutional claims presented[,] . . . this court can do so at the appropriate time.") Furthermore, even where the agency cannot rule on a constitutional question, it may nonetheless have "expertise [that] could be brought to bear on the . . . questions presented." *Thunder Basin*, 510 U.S. at 212–13. Thus, the fact that the agency here has admitted it does not have expertise in, and could not address, constitutional challenges to its own authority, does not mean that a district court must have jurisdiction. Instead, under *Thunder Basin*, the ability of the court of appeals to address the constitutional challenges is key.

To summarize, the *Thunder Basin* framework also supports the court's conclusion that plaintiffs' challenges, including their constitutional challenges, are subject to the NGA's exclusivity provision. Accordingly, this court lacks jurisdiction to address them. *See also Total Gas & Power N. Am., Inc.*, 2016 WL 3855865, at *11, 22 (applying *Thunder Basin* test to conclude that district court lacked jurisdiction over plaintiffs' claims, which included constitutional challenges to FERC's authority to impose civil penalties, and noting that the constitutional challenges could be raised through judicial review under § 717r in the courts of appeals).

### III. CONCLUSION

For the foregoing reasons, the court will grant defendants' motions to dismiss (Dkt. Nos. 10, 19) and will dismiss the FERC defendants from this case, as well as all non-Virginia

15

plaintiffs.  Plaintiffs' motion for preliminary injunction (Dkt. No. 4), which is based only on the first three counts, will also be denied as moot.  An appropriate order will be entered.  The order also will require plaintiffs to provide a certificate indicating that they have given the Attorney General of Virginia the notice required by Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403 with regard to Count Four, and that such certificate be filed not later than 10 days after entry of the court's order.

Entered: December 11, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge