**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――

No. 18-1042

―――――――

ORUS ASHBY BERKLEY; JAMES T. CHANDLER; KATHY E. CHANDLER; CONSTANTINE THEODORE CHLEPAS; PATTI LEE CHLEPAS; ROGER D. CRABTREE; REBECCA H. CRABTREE; GEORGE LEE JONES; ROBERT WAYNE MORGAN; PATRICIA ANN MORGAN; MARGARET MCGRAW SLAYTON LIVING TRUST; THOMAS TRIPLETT; BONNIE B. TRIPLETT,

   Plaintiffs - Appellants,

and

DAWN E. CISEK; MARTIN CISEK; EDITH FERN ECHOLS; ESTIAL E. ECHOLS, JR.,

   Plaintiffs,

v.

MOUNTAIN VALLEY PIPELINE, LLC; FEDERAL ENERGY REGULATORY COMMISSION; NEIL CHATTERJEE, in his official capacity as Acting Chairman of the Federal Energy Regulatory Commission,

   Defendants - Appellees.

―――――――

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Elizabeth Kay Dillon, District Judge. (7:17-cv-00357-EKD)

―――――――

Argued: May 10, 2018             Decided: July 25, 2018

―――――――

Before GREGORY, Chief Judge, and WYNN, and THACKER, Circuit Judges.

―――――――

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

---

**ARGUED:** Justin Michael Lugar, GENTRY LOCKE, Roanoke, Virginia, for Appellants. Susanna Y. Chu, FEDERAL ENERGY REGULATORY COMMISSION, Washington, D.C., for Appellees Federal Energy Regulatory Commission and Neil Chatterjee. Wade Wallihan Massie, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellee Mountain Valley Pipeline, LLC. **ON BRIEF:** Cynthia M. Kinser, Monica T. Monday, GENTRY LOCKE, Roanoke, Virginia, for Appellants. James P. Danly, General Counsel, Robert H. Solomon, Solicitor, FEDERAL ENERGY REGULATORY COMMISSION, Washington, D.C., for Appellees Federal Energy Regulatory Commission and Neil Chatterjee. Mark E. Frye, Seth M. Land, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellee Mountain Valley Pipeline, LLC.

---

WYNN, Circuit Judge:

Plaintiffs[1] are landowners along the path of a proposed natural gas pipeline. They brought this action against the Mountain Valley Pipeline, LLC, the Federal Energy Regulatory Commission, and Neil Chatterjee, in his official capacity as Acting Chairman of the Federal Energy Regulatory Commission (hereinafter collectively referred to as "Defendants") challenging the constitutionality of various provisions of the Natural Gas Act, 15 U.S.C. § 717 *et seq.* But the district court, without reaching the merits of Plaintiffs' challenges, dismissed their action for lack of subject-matter jurisdiction on the grounds that their claims must instead be brought through the agency review process laid out in the Natural Gas Act. We affirm.

I.

A.

This case involves a complex administrative review framework that warrants some introduction. In 1977, Congress transferred much of the authority from the now-defunct Federal Power Commission to the new Federal Energy Regulatory Commission

---

[1] Plaintiffs are Orus Ashby Berkley, James T. Chandler, Kathy E. Chandler, Constantine Theodore Chlepas, Patti Lee Chlepas, Roger D. Crabtree, Rebecca H. Crabtree, George Lee Jones, Robert Wayne Morgan, Patricia Ann Morgan, Margaret McGraw Slayton Living Trust, Thomas Triplett, Bonnie B. Triplett, Dawn E. Cisek, Martin Cisek, Edith Fern Echols, and Estial E. Echols, Jr. After this appeal was filed, Dawn Cisek, Martin Cisek, Edith Echols, and Estial Echols withdrew their discrete appeals. Accordingly, we have updated the caption of this case to reflect their status as Plaintiffs and not as Plaintiff-Appellants.

3

("FERC," or "the Commission"). *See* 42 U.S.C. §§ 7171–72. Among the transferred authorities was regulation of the natural gas industry, as outlined in the Natural Gas Act, 15 U.S.C. § 717 *et seq. See also* 42 U.S.C. § 7172 (transferring jurisdiction).

Under the Natural Gas Act, FERC is responsible for vetting and approving construction of new interstate natural gas pipelines and expansions of existing pipelines. *See* 15 U.S.C. § 717f. To approve such construction, FERC must find that the construction "is or will be required by the present or future public convenience and necessity." *Id.* § 717f(e). Once FERC makes that required finding and issues a "Certificate of public convenience and necessity" ("Certificate"), a pipeline company can begin construction. *Id.* § 717f(c).

Issuing such a Certificate conveys and automatically transfers the power of eminent domain to the Certificate holder. *See id.* § 717f(h). Thus, FERC does not have discretion to withhold eminent domain power once it grants a Certificate. *See Midcoast Interstate Transmission, Inc. v. FERC*, 198 F.3d 960, 973 (D.C. Cir. 2000). With the transferred power of eminent domain, a Certificate holder can then initiate condemnation proceedings in the appropriate U.S. district court or state court. *See* 15 U.S.C. § 717f(h).

Under the Natural Gas Act, an aggrieved party who seeks review from the issuance of a Certificate must first file for rehearing before FERC. *See id.* § 717r. If FERC either declines to rehear the matter or issues a final order upon rehearing the matter, the aggrieved party can file a petition for review in the appropriate court of

appeals, which has "exclusive" jurisdiction "to affirm, modify, or set aside [the final] order in whole or in part." *Id.* § 717r(b).[2]

B.

In the present case, FERC issued a Certificate to Mountain Valley Pipeline, LLC ("Mountain Valley Pipeline") in October 2017. *See* 15 U.S.C. § 717f(c). At the time FERC issued the Certificate, Plaintiffs had already filed the complaint in this matter against Defendants in the U.S. District Court for the Western District of Virginia challenging the constitutionality of various provisions of the Natural Gas Act. The Defendants moved to dismiss for lack of jurisdiction.

In December 2017, the district court granted the Defendants' motions to dismiss on two grounds. First, the district court found that Plaintiffs' challenges "inher[e]" in a FERC order and are thus subject to the exclusive review provisions of the Natural Gas Act. J.A. 535–40. Alternatively, the district court held that, even if Plaintiffs' challenges fell outside that regime, Congress implicitly divested the district court of jurisdiction, pursuant to the Supreme Court's framework laid out in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). Accordingly, the district court dismissed, without prejudice, three of the four counts for lack of subject-matter jurisdiction. Plaintiffs subsequently

---

[2] However, there are limits to appellate jurisdiction. For instance, "[n]o objection to the order of the Commission shall be considered by the court [of appeals] unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 15 U.S.C. § 717r(b). Additionally, "[t]he filing of an application for rehearing . . . shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order." *Id.* § 717r(c).

5

stipulated to having the remaining count dismissed with prejudice and timely appealed to this Court.[3]

## II.

We review the district court's dismissal of a complaint for lack of subject-matter jurisdiction de novo. *Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*, 376 F.3d 239, 241 (4th Cir. 2004). Ultimately, we agree with the district court that Congress implicitly divested the district court of jurisdiction to hear claims of the kind brought by Plaintiffs and instead intended for such claims to come to federal court through the administrative review scheme established by the Natural Gas Act. As a result, the district court correctly determined that it did not have jurisdiction to review the matter.

Over the past thirty years, the Supreme Court has issued a trio of cases addressing when Congress intends to divest district courts of jurisdiction over claims that should instead proceed exclusively through administrative review regimes. *See Elgin v. Dep't of the Treasury*, 567 U.S. 1 (2012); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,

---

[3] In a letter filed pursuant to Fed. R. App. P. 28(j), FERC informed this Court of further developments regarding the pending request for rehearing before the Commission in this case. Specifically, on June 15, 2018, FERC took final action on the matter and upheld its issuance of the Certificate to Mountain Valley Pipeline. In the time since FERC's final order, no party has requested that we take any steps in light of this development. Furthermore, although we have an obligation to raise mootness issues *sua sponte*, *see Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002), we do not believe issuance of that final order moots the case at bar, because there are still potential benefits to the Plaintiffs to being able to pursue their original action in district court. *See Smith v. Ashcroft*, 295 F.3d 425, 428 (4th Cir. 2002) (finding a case is not moot when the petitioner is still "unmistakably affected by the legal implications of our decision").

561 U.S. 477 (2010); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). This Court recently synthesized these three cases in *Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016).

In *Bennett*, the plaintiff, who owned an investment firm that was the subject of an investigation by the Securities and Exchange Commission ("SEC"), filed suit in district court claiming that the SEC unconstitutionally used administrative law judges as part of its enforcement proceedings. *See id.* at 177–78. In analyzing whether the district court had jurisdiction to hear that claim, this Court distilled the relevant Supreme Court precedent into "a two-step inquiry." *Id.* at 181.

At the first step, the court must consider "whether Congress's intent to preclude district-court jurisdiction is 'fairly discernible in the statutory scheme.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 207). "This [step] involves examining the statute's text, structure, and purpose." *Id.* At the second step, the court must determine "whether plaintiffs' 'claims are of the type Congress intended to be reviewed within this statutory structure.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212). With this framework in mind, we turn to the case at hand.

A.

To determine whether the district court had jurisdiction to hear Plaintiffs' claims, we begin with the first step of our inquiry: "whether Congress's intent to preclude district-court jurisdiction is fairly discernible in the statutory scheme." *Id.* at 181 (internal quotation marks omitted).

In *Bennett*, this Court found that aspects of the statute at issue in the case, the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, indicated that Congress

7

intended to divest the district court of jurisdiction. First, the statute established a "comprehensive scheme that provides for judicial review in the appropriate court of appeals." *Bennett*, 844 F.3d at 181. Furthermore, the statute "demonstrated [that Congress] knew how to preserve district-court jurisdiction, but declined to do so." *Id.* In particular, the Securities Exchange Act "authorize[d] district courts to exercise jurisdiction over certain actions brought by the agency *but not* by private parties." *Id.* Thus, the statute indicated that Congress did not want cases brought by private parties, like the plaintiff in *Bennett*, to be heard by district courts.

These considerations lead to the same conclusion in this case. Like the Securities Exchange Act, the Natural Gas Act establishes an extensive review framework, including review before FERC and eventually by a court of appeals. *See* 15 U.S.C. § 717r. And, as with the statute in *Bennett*, the Natural Gas Act specifically allows for district court jurisdiction over certain actions, such as condemnation proceedings. *See id.* § 717f(h). Thus, as did the statute in *Bennett*, the Natural Gas Act indicates that Congress knew how to allow for district court jurisdiction, yet it chose not to do so when it came to issues related to review of a Certificate. Rather, in such situations, Congress gave "exclusive" jurisdiction to the appropriate court of appeals—but only after going through the review process with FERC. *Id.* § 717r. Nothing in the Natural Gas Act indicates Congress intended to create exceptions to this exclusive jurisdiction of the courts of appeals, except those exceptions specifically set out in the statute.

So, under this Court's precedent in *Bennett*, the Natural Gas Act's text and structure evince an intent from Congress to remove district-court jurisdiction.

8

B.

Continuing our analysis of whether the district court had jurisdiction to hear Plaintiffs' claims in this matter, we next consider the second step of our inquiry: "whether plaintiffs' claims are of the type Congress intended to be reviewed within this statutory structure." *Bennett*, 844 F.3d at 181 (internal quotation marks omitted). In so doing, we consider three factors: "(1) whether the statutory scheme foreclose[s] all meaningful judicial review," "(2) the extent to which the plaintiff's claims are wholly collateral to the statute's review provisions, and (3) whether agency expertise could be brought to bear on the . . . questions presented." *Id.* (alteration in original) (internal quotation marks omitted). Of the three factors considered at the second step, we stated in *Bennett* that the first factor—"meaningful judicial review"—is the "most important." *Id.* at 183 n.7.

Regarding the first factor, whether the Natural Gas Act provides for meaningful judicial review in the circumstances before us, Plaintiffs argue that, because their claims are constitutional in nature and challenge the legitimacy of the statute itself, FERC cannot rule on them. Thus, Plaintiffs argue that they are deprived of meaningful review by having to wait until those claims are reviewed by a court of appeals.

In *Bennett*, however, we recognized that the Supreme Court had already rejected a similar line of reasoning. *See id.* at 184. Specifically, in *Thunder Basin*, the Supreme Court said that "constitutional claims . . . [could] be meaningfully addressed in the Court of Appeals," even if the agency could not adjudicate them in the first instance. 510 U.S. at 215. The Supreme Court in *Elgin* said the same. *See* 567 U.S. at 15–18. Thus,

9

notwithstanding that Plaintiffs are "attack[ing] the legitimacy of the forum" itself, review is still meaningful, even if it is withheld until first going through an agency that cannot rule on Plaintiffs' constitutional claims. *Bennett*, 844 F.3d at 184.

For that reason, in *Bennett*, this Court said that a question about the constitutionality of an administrative law judge's authority to hear cases must also go through the agency review process, and that eventual review of the constitutional question before the court of appeals would still be meaningful. *See id.* at 184–86. In this way, *Bennett*, *Thunder Basin*, and *Elgin* fatally undercut Plaintiffs' argument. All three decisions establish that FERC's inability to resolve Plaintiffs' constitutional claims does not mean that the statutory scheme deprives Plaintiffs of meaningful judicial review.

Plaintiffs further attempt to distinguish their case from *Bennett* by arguing that the Natural Gas Act requires FERC to review petitions for rehearing within 30 days and that, by tolling this period, FERC unfairly delays judicial review while simultaneously allowing Mountain Valley Pipeline to begin construction.[4] This argument does not align with the statute, however.

Contrary to what Plaintiffs argue, FERC is not required to finally decide petitions for rehearing within 30 days. Rather, the statute says that "[u]nless the Commission *acts*

---

[4] According to Plaintiffs—and undisputed by FERC—FERC regularly issues statements within 30 days of petitions for rehearing being filed that state, "[i]n order to afford additional time for consideration of the matters raised or to be raised, rehearing of the Commission's order is hereby granted for the limited purpose of further consideration, and timely-filed rehearing requests will not be deemed denied by operation of law. Rehearing requests of the above-cited order filed in this proceeding will be addressed in a future order." Appellants' Br. at 20 n.7.

10

upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied." 15 U.S.C. § 717r(a) (emphasis added). Thus, the statute does not require a final decision within 30 days; it requires FERC to take *some kind of action* within 30 days for the petition not to be deemed denied by operation of law. FERC does so by issuing the tolling order.

That conclusion is not changed simply because the pipeline construction may continue while a rehearing petition is pending. We know this because Congress contemplated construction would be allowed to continue while FERC reviews a petition for rehearing. Specifically, the Natural Gas Act provides that "[t]he filing of an application for rehearing . . . shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order." *Id.* § 717r(c). Therefore, Plaintiffs have failed to establish that, under the facts of this case, the Natural Gas Act "foreclose[s] all meaningful judicial review." *Bennett*, 844 F.3d at 181 (alteration in original).

To be sure, we acknowledge the possibility that FERC's use of a tolling order in certain cases may, in effect, deny a plaintiff meaningful judicial review, regardless of whether the Natural Gas Act could, in theory, provide such recourse. After all, there is a "strong presumption that Congress did not mean to prohibit all judicial review of executive action," *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 (1986) (internal quotation marks omitted), and undoubtedly in some rare situations, agency inaction may turn the promise of meaningful review into meaningless review.

Notably, we recognized in *Bennett* that plaintiffs are denied meaningful review when they are subject to "'some additional and irremediable harm beyond the burdens

11

associated with the dispute resolutions process.'" 844 F.3d at 186 n. 13 (quoting *Tilton v. SEC*, 824 F.3d 276, 286 (2d Cir. 2016)); *see also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496–97 (1991) (holding that respondents were not "as a practical matter . . . able to obtain meaningful judicial review" when they sought to challenge certain procedures used by the Immigration and Naturalization Service, because raising their claims would have also required them to "voluntarily surrender themselves for deportation"); *Mathews v. Eldridge*, 424 U.S. 319, 331 (1976) (finding that procedural due process was violated where "an erroneous termination" of disability benefits would "damage [the respondent] in a way not recompensable through retroactive payments"); *Hill v. SEC*, 825 F.3d 1236, 1247 (11th Cir. 2016) (finding that the administrative review scheme in the Securities Exchange Act of 1934 provides meaningful review of civil enforcement actions brought by the SEC, because those challenging the actions could not show they "are likely to suffer irreparable injury while awaiting judicial review"); *Kreschollek v. S. Stevedoring Co.*, 78 F.3d 868, 874–75 (3d Cir. 1996) (holding that the Longshore and Harbor Workers' Compensation Act did not provide meaningful review under the *Thunder Basin* standard, because the result of requiring litigants to wait until being heard before the court of appeals, "albeit not necessarily the absence of any judicial review at all, might well be the absence of any effective judicial review," as a result of "serious irreparable injury" that could occur in the intervening time).

However, although Plaintiffs' brief makes a few unsupported assertions about injuries they will suffer, they point to no evidence to corroborate their claims and, more critically, make no detailed arguments about those potential injuries. From the briefing,

12

we have no answer as to what specific injuries Plaintiffs are alleging are potentially irreparable, why those injuries are not recompensable if post-deprivation relief is provided by the court of appeals, and how those specific claims distinguish Plaintiffs' case from seemingly contrary cases, such as *Thunder Basin*, *Elgin*, and *Bennett*. As the case is currently presented, Plaintiffs have not adequately produced evidence of irreparable injury, thereby indicating that the administrative review scheme found in the Natural Gas Act can provide meaningful review for their claims. Thus, the first factor weighs in favor of finding that Congress did not intend for district courts to have jurisdiction over claims such as those brought by Plaintiffs.

We next consider the second factor—that is, whether a claim is "wholly collateral" to the statutory review scheme. *Bennett*, 844 F.3d at 186. In *Bennett*, this Court found that the plaintiff's constitutional claims were not wholly collateral to the administrative proceeding because they were "the vehicle by which she s[ought] to vacate the ALJ's initial findings." *Id.* at 187 (internal quotation marks omitted).

The same analysis applies here. Plaintiffs' constitutional claims are the means by which they seek to vacate the granting of the Certificate to Mountain Valley Pipeline. Therefore, their claims are not wholly collateral to the Natural Gas Act's statutory review scheme. This conclusion accords with the Supreme Court's findings in its trio of cases.

In *Elgin*, for example, the plaintiff's constitutional claims were not wholly collateral to the statutory review scheme found in the Civil Service Reform Act of 1978 because the claims comprised the vehicle by which the plaintiff sought to challenge his firing from government employment. *See* 567 U.S. at 7–8, 22. By way of contrast, in

13

*Free Enterprise*, the plaintiffs' constitutional challenge to the Public Company Accounting Oversight Board's existence was wholly collateral to the review scheme found in the Sarbanes-Oxley Act of 2002, because the plaintiffs' challenge was unrelated to any particular action taken by the Board. S*ee* 561 U.S. at 490–91. District-court jurisdiction was the only way the plaintiffs' claims in *Free Enterprise* could have been reviewed by a court, absent the plaintiffs intentionally incurring a sanction by the Board so as to create an administrative action through which to lodge their constitutional challenge. *Id.*

The situation here is more like that of *Elgin* and *Bennett*. Plaintiffs are seeking to reverse the issuance of a specific Certificate. The statutory review scheme provides for eventual review of this issue before a court of appeals; therefore, Plaintiffs must work through the statutory review scheme first. Thus, the second factor weighs in favor of finding that Congress did not intend for district courts to have jurisdiction over claims such as those brought by Plaintiffs.

Finally, we consider the third factor of "whether agency expertise could be brought to bear on the . . . questions presented." *Bennett*, 844 F.3d at 181 (internal quotation marks omitted). When considering this factor in *Bennett*, this Court said that agencies could "apply [their] expertise to threshold questions that may accompany a constitutional claim against a federal statute, even when the agency disclaimed authority to resolve those constitutional claims." *Id.* at 187 (internal quotation marks omitted). For example, the *Bennett* Court said the SEC "could bring its expertise to bear . . . by concluding that the Division of Enforcement's substantive claims [were] meritless,

14

thereby fully disposing of the case before reaching the constitutional question." *Id.* at 187–88. The Court acknowledged such a result was "unlikely" but nonetheless found that Supreme Court precedent "emphasized that 'one of the principal reasons to await the termination of agency proceedings is to obviate all occasion for judicial review.'" *Id.* at 188 (quoting *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 n.11 (1980)).

The same is true here. Although perhaps unlikely to occur, FERC had the ability to, upon rehearing Plaintiffs' challenge here—and may still in future cases—revoke its issuance of a Certificate based upon threshold questions within its expertise. If that had occurred, Plaintiffs' constitutional claims would have been moot, without requiring a court to rule on them at all. Thus, under our precedent in *Bennett*, this final factor also weighs in favor of finding that Congress did not intend for district courts to have jurisdiction over claims such as those brought by Plaintiffs.

### III.

In conclusion, under the two-step analysis this Court set out in *Bennett*, Congress intended to divest district courts of jurisdiction to hear the claims pursued by Plaintiffs and instead intended those claims to be brought under the statutory review scheme established by the Natural Gas Act. Accordingly, the district court lacked subject-matter

jurisdiction to hear Plaintiffs' claims and appropriately dismissed their claims without prejudice.[5]

The judgment of the district court is

*AFFIRMED.*

---

[5] We vacate the portion of the district court's opinion discussing an alternative ground for its holding—that the Plaintiffs' challenges "inher[e]" in a Commission order and are thus subject to the exclusive review provisions of the Natural Gas Act. J.A. 535–40. And because we uphold the district court's conclusion based upon its application of *Thunder Basin*, *Bennett*, and related cases, we decline to address that other line of reasoning in greater detail.